IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2015 FEB -5  A 10: 27

CLERK _JBuxton_
SO. DIST. OF GA.

| | |
|---|---|
| DANIEL HAYDEN and HAYDENS INTERNATIONAL GYMNASTICS ACADEMY, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>DENNIS HAYDEN and TANYA HAYDEN,<br><br>    Defendants. | **CV115-020**<br><br>Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, by and through their undersigned counsel, for a Complaint against Defendants, respectfully allege as follows:

### PARTIES AND JURISDICTION

Plaintiffs

1. Plaintiff Daniel Hayden is a citizen of Georgia. His domicile is in Georgia, and he resides at 4375 Marshall Way, Evans, Georgia 30809. Daniel Hayden is subject to the jurisdiction and venue of this Court.

2. Plaintiff Haydens International Gymnastics Academy, Inc. ("HIGA") is a corporation incorporated under the laws of Georgia. The principal place of business is located at 4300 Evans to Locks Road, Evans, Georgia 30809. HIGA is a citizen of Georgia. HIGA is subject to the jurisdiction and venue of this Court.

1

Defendants

    3.    Defendant Dennis Hayden is a citizen and resident of Pennsylvania. He is domiciled in Pennsylvania. He is subject to the jurisdiction of this Court. Defendant's residence address is 746 Gregs Drive, Harrisburg, Pennsylvania 17111, and his work address is 20 Bradford Boulevard, Harrisburg, Pennsylvania 17112. Defendant may be served at Artistic Sports Academy Plus, 20 Bradford Boulevard, Harrisburg, Pennsylvania 17112.

    4.    Defendant Tanya Hayden is a citizen and resident of Pennsylvania. She is domiciled in Pennsylvania. She is subject to the jurisdiction of this Court. Defendant's residence address is 746 Gregs Drive, Harrisburg, Pennsylvania 17111, and her work address is 20 Bradford Boulevard, Harrisburg, Pennsylvania 17112. Defendant may be served at Artistic Sports Academy Plus, 20 Bradford Boulevard, Harrisburg, Pennsylvania 17112.

Jurisdiction and Venue

    5.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. For diversity jurisdiction purposes, the citizenship of a corporation is the state of incorporation and the state of its principal place of business. This matter is between citizens of Georgia (Plaintiffs) on the one hand and citizens of Pennsylvania (Defendants) on the other.

    6.    This Court has personal jurisdiction over Defendants because they entered into a contract with Plaintiffs in Georgia while they resided in Georgia, and this action arises out of Defendants' breach of that contract caused by their acts and/or omissions within Georgia and/or affecting Georgia residents, including Plaintiffs. Furthermore, Defendants specifically consented to jurisdiction in this Court pursuant to the contract. The exercise jurisdiction over Defendants

by this Court would not offend traditional notions of fair play and substantial justice. Similarly, it would not offend the due process clauses of the federal and state constitutions.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because the contract was entered into in Georgia and a substantial part of the events giving rise to the claims in this action occurred within Georgia and/or affect Georgia residents. Furthermore, Defendants specifically waived any venue objections against the federal courts in Georgia for all actions arising out of or in connection with the interpretation or enforcement of the contract.

## FACTUAL ALLEGATIONS

8. On May 14, 2014, Dennis and Tanya Hayden entered into a Non-Competition/Non-Solicitation/Non-Disparagement/Confidentiality Agreement ("Agreement"), attached as **Exhibit A**, with Daniel Hayden and HIGA. Pursuant to the Agreement, Dennis and Tanya Hayden agreed not to directly or indirectly compete with HIGA within the Restricted Territory, as defined in the Agreement.

9. Dennis and Tanya Hayden also agreed to keep confidential the Confidential Information, as defined in the Agreement, within the Restricted Period, as defined in the Agreement.

10. They also agreed not to solicit employees, suppliers, or customers of HIGA.

11. On or about November 28, 2014, Tanya Hayden, on behalf of herself and her husband, Dennis Hayden, solicited business for their daughter, Cassie Hayden, and her business partner, Candice Kobert, on Facebook for their new business called C&C Gymnastics, LLC. The Facebook message is attached as **Exhibit B**.

12. According to counsel for Cassie Hayden and Candice Kobert, at least as of December 15, 2014, they intended to start a gym competing with HIGA at the beginning of 2015

within the Restricted Territory. Their intent was confirmed on the website and Facebook page for C&C Gymnastics, LLC, as shown by **Exhibit C**. The gym is now open.

13.     Section 5 of the Agreement provides for liquidated damages in the event of a breach. Dennis and Tanya Hayden's violation has occurred during the first year following the date the Agreement was executed. Therefore, Dennis and Tanya Hayden are required pursuant to the Agreement to pay Plaintiffs $75,000 in liquidated damages.

14.     Pursuant to the Agreement, that amount may be offset by canceling any balance due and payable on the $75,000 Promissory Note owed to Dennis and Tanya Hayden referenced in the Agreement. Therefore, nothing further should be owed on the note.

15.     Defendants have caused damages to Plaintiffs.

16.     Section 4 of the Agreement provides that Plaintiffs may recover all damages available under law, including reasonable attorney's fees and other litigation expenses.

17.     Section 4 of the Agreement also grants Plaintiffs the right to injunctive relief against Defendants.

18.     Section 6 of the Agreement provides that in the event that Defendants breach any or all of the restrictive covenants in the Agreement, the running of the restrictions set forth in the sections breached shall be tolled during the continuance of any such breach, and the running of the period of such restrictions shall commence again only upon compliance by Defendants with the terms of the applicable section breached.

### FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

19.     Plaintiffs reiterate and reallege paragraphs 1 through 18 as though set forth herein verbatim.

20.     The Agreement is a legally binding contract.

21. Defendants breached the contract in bad faith when they failed to comply with the terms of the contract.

22. Defendants knew, or reasonably should have known, that if they failed to comply with the terms of the contract, Plaintiffs would suffer damages.

23. As a result of Defendants' breach of contract, Plaintiffs suffered damages. Plaintiffs seek compensation for those damages. In addition, Plaintiffs seek liquidated damages in the amount of $75,000. Plaintiffs also seek costs of this action and attorneys' fees.

## FOR A SECOND CAUSE OF ACTION
(Unjust Enrichment)

24. Plaintiffs repeat and incorporate their responses to paragraphs 1 through 23 as if fully set forth herein.

25. As a result of Defendants' actions, Defendants have been unjustly enriched.

26. Defendants should be required to compensate Plaintiffs for such benefit.

27. As a result of Defendants' actions, Plaintiffs suffered damages.

28. Plaintiffs seek damages, attorneys' fees, and costs of this action.

## FOR A THIRD CAUSE OF ACTION
(Declaratory Judgment)

29. Plaintiffs repeat and incorporate their responses to paragraphs 1 through 28 as if fully set forth herein.

30. Pursuant to section 6 of the Agreement, Defendants breach of the restrictive covenants contained in the Agreement toll the running of the restrictions.

31. Plaintiffs seek a declaration from this Court that the running of the restrictive covenants are tolled from November 28, 2014 until this case is resolved by the later to occur: the

entry of a final order in this case or the entry of a final order in any final appeal by any party to this action.

## JURY DEMAND

32. Plaintiffs request a trial by jury.

## RELIEF REQUESTED

Wherefore, Plaintiffs pray for judgment against Defendants and all available relief including, but not limited to, the following:

(a) actual damages in an amount to be determined at trial, attorneys' fees, and costs of this action;

(b) liquidated damages in the amount of $75,000;

(c) an injunction against Defendants;

(d) a declaration that the running of the restrictive covenants is tolled; and

(e) such other and further relief as the Court deems just and proper.

This 5 day of February, 2015.

*/s/ J. Brian King*
J. Brian King
Georgia Bar No. 420948

*/s/ John A. Donsbach*
John A. Donsbach
Georgia Bar No. 225827

Attorneys for Plaintiffs

                Donsbach & King, LLC  
                P.O. Box 212139  
                Martinez, Georgia  30917-2139  
                Telephone:  (706) 650-8750  
                Facsimile:  (706) 651-1399  
                Email:  bking@donsbachking.com  
                        jdonsbach@donsbachking.com

# EXHIBIT F

| | | |
|---|---|---|
| STATE OF GEORGIA | ) | NON-COMPETITION/NON-SOLICITATION/ |
| | ) | NON-DISPARAGEMENT/ |
| COUNTY OF COLUMBIA | ) | CONFIDENTIALITY AGREEMENT |

This NON-COMPETITION/NON-SOLICITATION/CONFIDENTIALITY AGREEMENT ("Agreement") effective the _14_ day of _May_, 2014, is made and entered into by and between DENNIS HAYDEN and TANYA HAYDEN, Georgia residents ("Sellers"), and DANIEL HAYDEN ("Purchaser") relating to the sale of Sellers' stock in HAYDENS INTERNATIONAL GYMNASTICS ACADEMY, INC., a Georgia corporation ("Company").

A. Sellers are shareholders of the Company.

B. Pursuant to that certain Stock Purchase Agreement effective _May 14_, 2014 ("Purchase Agreement"), Sellers are selling and transferring to Purchaser all of their stock in the Company.

C. Pursuant to that certain Purchase Agreement, it is a condition to the obligation of Purchaser to consummate the transactions contemplated by the Purchase Agreement that Sellers execute this Agreement.

D. Sellers will derive substantial economic benefit from the sale of their stock in the Company pursuant to the Purchase Agreement.

E. Sellers acknowledge that Purchaser is purchasing all of their shares and that Purchaser would not affect the closing of the transactions contemplated by the Purchase Agreement unless Sellers agree to the terms of this Agreement and execute and deliver this Agreement to Purchaser and Company at the closing.

NOW, THEREFORE, in consideration of the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. *Definitions.* The following terms, as used in this agreement, shall have the following meanings:

1.1 "Confidential Information" means any information which is proprietary or unique to the Company, including but not limited to trade secret information, matters of a technical nature such as processes, devices, techniques, data and formulas, research subjects and results, marketing methods, plans and strategies, operations, products, revenues, expenses, profits, sales, key personnel, customers, suppliers, pricing policies, customer lists, electronic mail, and any information concerning the marketing and other business affairs and methods of the Company

EXHIBIT A

NON-COMPETITION/NON-SOLICITATION/NON-DISPARAGEMENT/CONFIDENTIALITY AGREEMENT .............. Page 2

which is not readily available to the public.

1.2 "Restricted Territory" means a thirty (30) mile radius of the current location of the Company at 4300 Evans to Locks Road, Evans, Georgia 30809, in Columbia County, Georgia.

1.3 "Restricted Business" means any business activity relating to the operation of a commercial gym, gymnastics, rhythmic gymnastics, tumbling, trampoline, Parkour, preschool gym and learn, cheerleading, choreography, Xcel training, which shall include, but not be limited to, the training, education, and coaching of any amateur or professional athletes or students, as carried on by the Company for such listed services as well as all services currently performed by the Company as of the date of this agreement, and all ancillary services provided by the Company, without the prior written consent of the Company within the Restricted Territory.

1.4 "Person" means any individual, any partnership, any corporation, any association, any joint stock company, any trust, any joint venture, any unincorporated organization, or any governmental entity (or any department, agency, or political subdivision thereof).

2. *Confidential Information.* Sellers acknowledge that in connection with Sellers' ownership and/or employment in the Company, Sellers have obtained Confidential Information, and Sellers agree that Sellers will not disclose to any Person or entity any Confidential Information, except with Purchaser's express prior written consent. The confidentiality obligations imposed by this paragraph 2 shall cease to apply to any item of Confidential Information after the earliest of the date on which Sellers provide Purchaser with written evidence clearly establishing that such item of Confidential Information: (1) was publicly available prior to Sellers' receipt of such item of Confidential Information from the Company, or (ii) has become generally known to the public through no fault of Sellers.

3. *Non-competition, Non-solicitation, and Non-disparagement.* Sellers acknowledge and agree with Purchaser that during the course of Sellers' ownership and/or employment with the Company, Sellers had the opportunity to develop relationships with existing employees, customers, and other business associates of the Company, which relationships constitute goodwill of the Company, and Sellers acknowledge and agree that Purchaser would be irreparably damaged if Sellers were to take actions that would damage or misappropriate the goodwill. Sellers accordingly covenant and agree as follows:

3.1 In consideration of Purchaser closing the transactions contemplated by the Purchase Agreement and the execution of the Agreements executed contemporaneously with this Agreement, for a period of three (3) years following the execution of this Agreement ("Restricted Period"), Sellers shall not directly or indirectly, enter into, engage in, assist, give or lend funds to, guarantee, act as a co-signatory, pledge, or otherwise finance, be employed by or consult with, have an ownership or equity interest in, or have a financial or other interest in, any business which engages in any aspect of the Restricted Business within the Restricted Territory, whether for or by themselves or as an independent contractor, agent, stockholder, partner, or joint venturer for any other Person.

TM

3.2     Sellers covenant and agree that, during the Restricted Period, Sellers will not, directly or indirectly, either for themselves or for any other Person (i) solicit any employee of the Company to terminate his or her employment with the Company, (ii) employ any employee of the Company during his or her employment with the Company and for a period of three (3) years after such individual terminates employment with the Company; provided, however, that Sellers are free to employ any employee whose employment relationship with the Company is terminated by the Company, (iii) solicit any supplier to the Company to purchase or distribute information, products, or services of or on behalf of Sellers or such other Person that are competitive with the information, products, or services provided by the Company and located within the Restricted Territory, (iv) solicit any customer of the Company to utilize the services of or on behalf of Sellers or such other Person that are competitive with the services provided by the Company within the Restricted Territory, or (v) take any action within the Restricted Territory during the Restricted Period, including without limitation, the making of disparaging statements concerning the Company or its officers, directors, or employees, that is reasonably likely to cause injury to the relationships between the Company or any of its employees and any lessor, lessee, vendor, supplier, customer, distributor, employee, consultant, or other business associate of the Company, as such relationship relates to the Company's conduct of the Restricted Business.

3.3     Sellers understand the foregoing restrictions may limit Sellers' ability to earn a livelihood in a business similar to the Restricted Business within the Restricted Territory, but Sellers nevertheless believe Sellers have received and will receive sufficient consideration and other benefits as a result of the closing of the transactions contemplated by the Purchase Agreement to clearly justify such restrictions which, in any event (given Sellers' education, skills, and ability), Sellers do not believe would prevent them from otherwise earning a living.

4.     *Remedies.*  In the event of the violation or threatened violation by Sellers of any of the covenants contained in this Agreement, in addition to any other remedy available in law or in equity, Purchaser shall have (i) the right and remedy of specific enforcement, including injunctive relief, it being acknowledged and agreed that any such violation or threatened violation will cause irreparable injury to Purchaser and that monetary damages will not provide an adequate remedy; and (ii) the right to any and all damages available as a matter of law, and, if Purchaser is successful on the merits, costs and expenses incurred by Purchaser in pursuing its rights under this Agreement, including reasonable attorneys' fees and other litigation expenses. If any action or proceeding is instituted by or on behalf of the Company to enforce any term of this Agreement, Sellers waive any claim or defense that the Company has an adequate remedy at law or that the Company has not been, or is not being, irreparably injured by Seller's breach or default. In no case shall a waiver of any right of the Purchaser or Company of the right to seek relief under this provision constitute a waiver of any other relief or a waiver to enjoin further or future violations.

5.     *Liquidated Damages.*  It is specifically agreed that if it is determined by a court of competent jurisdiction that Sellers have violated the covenants contained in this Agreement, Sellers shall pay to Purchaser as liquidated damages a portion of the purchase price of the transaction in the pro-rated amount of Seventy-five Thousand and No/100 Dollars ($75,000.00), computed as

follows: (1) if the violation occurs during the first year of this Agreement, Sellers shall pay the Company $75,000; (2) if the violation occurs during the second year of this Agreement, Sellers shall pay the Company $50,000; (3) if the violation occurs during the third year of this Agreement, Sellers shall pay the Company $25,000. Any payment owed by Sellers as set forth above may be offset by cancelling any balance due and payable on the Seventy-five Thousand and No/100 Dollars ($75,000.00) promissory note. The parties agree that damages caused by the breach of the covenants contained in this Agreement are difficult or impossible to accurately calculate. The parties agree they intend the provision for the measure of damages of Purchaser in the event of the breach by Sellers of the covenants contained in this Agreement to be liquidated damages, and not a penalty. If this provision is deemed to be unenforceable for any reason, then Purchaser or Company may seek actual damages and any other remedy allowed by law that result from any breach of this Agreement.

6. *Tolling.* In the event that Sellers breach any or all of the covenants set forth in Sections 2 and 3 on this Agreement, the running of the restrictions set forth in the sections breached shall be tolled during the continuation(s) of any such breach by Sellers, and the running of the period of such restrictions shall commence or commence again only upon compliance by Sellers with the terms of the applicable section breached.

7. *Severability.* Should any covenant, term, or condition contained in this Agreement become or be declared invalid or unenforceable by a court of competent jurisdiction, the parties agree that the court shall be requested to judicially modify such unenforceable provision consistent with the intent of this Agreement so that it shall be enforceable to the fullest extent possible.

8. *Applicable Law; Jurisdiction.* This Agreement shall be construed, interpreted, and enforced according to the statutes, rules of law, and court decisions of the State of Georgia without regard to conflict of law provisions. Sellers hereby submit to the jurisdiction of, and waive any venue objections against, the State of Georgia and the federal courts of the United States located in such state in respect of all actions arising out of or in connection with the interpretation or enforcement of this Agreement, and Sellers consent to the personal jurisdiction of such courts for such purposes.

9. *Amendments; Waivers.* This Agreement may be amended, modified, superseded, or canceled, and the terms or covenants waived, only by a written instrument executed by all of the undersigned parties. The failure to require performance of any provision hereof shall in no manner affect the right at a later time to enforce the same. No waiver of any term, whether by conduct or otherwise, shall be deemed to be a further or continuing waiver of any such breach, or a waiver of the breach of any other term contained in this Agreement.

10. *Notices.* All notices under this Agreement shall be in writing and shall be deemed effective when delivered in person or forty-eight (48) hours after deposit thereof in the U.S. mails, postage prepaid, addressed, in the case of Sellers, to Sellers' address set forth at the end of this Agreement, and, in the case of Purchaser, to Purchaser's address set forth at the end of this Agreement, or to such other address as the party to be notified may specify by written notice to

TM

NON-COMPETITION/NON-SOLICITATION/NON-DISPARAGEMENT/CONFIDENTIALITY AGREEMENT ............ Page 5

the other party.

11. *Construction.* Paragraph headings are for convenience only and shall not be considered a part of the terms and provisions of the Agreement.

12. *Counterparts.* This Agreement may be executed in counterparts, each of which shall be deemed an original and which together shall constitute one in the same Agreement.

IN WITNESS WHEREOF, the undersigned have executed this Agreement, with the intent to seal, the __14__ day of May, 2014.

WITNESSES:

_____

_____

SELLERS:

_____(L.S.)
DENNIS HAYDEN
900 Prairie Pass, Evans, Georgia 30809

WITNESSES:

_____

_____

_____(L.S.)
TANYA HAYDEN
900 Prairie Pass, Evans, Georgia 30809

WITNESSES:

_____

_____

_____(L.S.)
DANIEL HAYDEN
4300 Evans to Locks Road, Evans, Georgia 30809

NON-COMPETITION/NON-SOLICITATION/NON-DISPARAGEMENT/CONFIDENTIALITY AGREEMENT ............. Page 6

WITNESSES:

*[signature: Stacie M. Hunter]*

*[signature: Joan C Gay]*

HAYDENS INTERNATIONAL GYMNASTICS ACADEMY, INC.

By: *[signature: Dennis Hayden]* (SEAL)
Dennis Hayden, President
4300 Evans to Locks Road, Evans, Georgia 30809

TM

**About**          **Photos**          **Friends**



 **Tanya Sproule-Hayden** shared **Cassie Hayden**'s **photo**.

3 minutes ago

Dennis and I are super excited to announce the opening of my daughter and her best friend Candice Kobert's gym in Augusta Georgia in January 2015!!! The gym will be called C&C Gymnastics!! This gym is founded on a deep love for the sport and a childhood dream come true! We are so proud!! Please spread the word.....There's a NEW GYM in town

EXHIBIT B

 **Cassie Hayden**

30 minutes ago near Charlotte, NC

We are so excited to announce that after months of planning we are opening C&C Gymnastics!!! It was our childhood dream and we are so blessed to have



**C&C Gymnastics is on Facebook.**

To connect with C&C Gymnastics, sign up for Facebook today.



Timeline  About  Photos  Likes  Videos

**PEOPLE**

**362** likes

**ABOUT**

We are excited to announce that after months of planning we are opening C&C Gymnastics! It was our childhood dream and we are ready to turn it into realty!

http://www.CandCgymnastics.com/

**PHOTOS**



 **C&C Gymnastics**
January 14 at 12:39pm ·

Join us for our GRAND OPENING CELEBRATION on January 31st from 12 pm to 3 pm. We will have door prizes, food, activities, and gym time! All guests will have a chance to win a FREE MONTH of tuition, private lessons, t-shirts, and more! We can't wait to see YOU!!!



Like · Comment · Share ·   39   3   35

 **C&C Gymnastics**
January 11 at 5:08pm ·

Anyone interested in adult tumbling classes??? Let us know!

**VIDEOS**