UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| DANIEL HAYDEN and HAYDENS INTERNATIONAL GYMNASTICS ACADEMY, INC.,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>DENNIS HAYDEN and TANYA HAYDEN,<br><br>Defendants/Counter-Plaintiffs,<br><br>and<br><br>ROBERT GIANCROCE,<br><br>Third-Party Defendant. | Civil Action No.1:15-cv-020 |

## REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS

Having properly given notice of their intent to file a reply brief to the Clerk of Court pursuant to Civil Local Rule 7.6 of this Court (Doc. no. 23.), Plaintiffs reply as follows:

ARGUMENT

I. Defendants' claim for breach of the confidentiality provisions of the settlement agreement is not a compulsory counterclaim that must be brought in this Court.

Defendants assert that their counterclaim for breach of the confidentiality provisions of the settlement agreement must be brought in this Court as a compulsory counterclaim under Rule 13(a) or be forever barred. In light of the forum-selection clause bargained for and agreed to by Defendants, this Court is not the proper forum for the proposed counterclaim.

1

Because the forum-selection clause requires that any dispute arising out of or related to the settlement agreement be brought in either Columbia County Magistrate Court or Superior Court, it cannot be brought in this Court pursuant to the terms of the contract, and therefore, logically, it cannot be a compulsory counterclaim that must be brought in this Court. See Publicis Communication v. True North Communications Inc., 132 F.3d 363, 366 (7th Cir. 1997) (holding that a valid forum-selection clause should not be ignored and even compulsory counterclaims should be dismissed if filed in an improper forum); Karl Koch Erecting Co., Inc. v. New York Convention Ctr. Dev. Corp., 838 F.2d 656, 659 (2d Cir. 1988) (same).[1] Forum-selection clauses are treated like arbitration clauses, which are just a particular type of forum-selection clause. Publicis, 132 F.3d at 366 (recognizing Ninth Circuit's view that a compulsory counterclaim may not be asserted when a dispute is covered by a contract's arbitration clause). Whether a claim can be brought at all in a particular court is a threshold issue to the determination of whether a claim must be brought as a compulsory counterclaim in that court. Id.; see also Innovative Display Techs. LLC v. Microsoft Corp., No. 13-cv-783, 2014 U.S. Dist. LEXIS 82429, at *18, n. 6 (E.D. Tex. June 17, 2014) ("[C]ompulsory counterclaims do not trump the forum selection clause."). Defendants' claim cannot be maintained in this Court as a compulsory or permissive counterclaim. See 6 Charles Alan. Wright, et. al., Federal Practice and Procedure § 1412 (2d ed. 2010). Concomitantly, Plaintiffs cannot assert the affirmative defense of claim preclusion in the proper forum based on the

---

[1] It does not appear that the Eleventh Circuit has specifically addressed the issue of whether a party must file a compulsory counterclaim in an improper forum to avoid having that claim barred in a proper forum. The Seventh and Second Circuits have, as cited above. Several district courts in the Third, Fifth, Ninth, and Tenth Circuits have addressed the issue and come to the same conclusion as the Seventh and Second Circuits. See, e.g., Excentus Corp. v. Giant Eagle, Inc., No. 13-178, 2013 U.S. Dist. LEXIS 168221, at *7-16 (W.D. Pa. Nov. 26, 2013) (following the Seventh and Second Circuit's reasoning); Bancroft Life & Cas. ICC v. Davnic Ventures, L.P., No. H-12-2015, 2013 U.S. Dist. LEXIS 41630, at *10-12 (S.D. Tex. Mar. 25, 2013) ("[T]he Court may not ignore the forum-selection clause."); Bancroft Life & Cas., ICC, Ltd. v. Scolari, No. 11-cv-5017, 2012 U.S. Dist. LEXIS 18621, at *8 (W.D. Wash. Feb. 14, 2012) ("A counterclaim defined as "compulsory" under Fed. R. Civ. P. 13(a) is not immune from dismissal when the counterclaim is controlled by an enforceable forum selection clause."); Sokkia Credit Corp. v. Bush, 147 F. Supp. 2d 1101, 1105-06 (D. Kan. 2001) (following the Seventh Circuit's reasoning). There is no reason to think the Eleventh Circuit would not follow the other courts' reasoning.

failure of Defendants to assert and litigate the counterclaim in this Court. See Publicis, 132 F.3d at 366; Water & Sand Int'l Capital, Ltd. v. Capacitive Deionization Tech. Sys., 563 F. Supp. 2d. 278, 284 (D.D.C. 2008); Wright, et. al., § 1412.

Defendants' counterclaim for breach of the confidentiality provisions of the settlement agreement is not a compulsory counterclaim because it does not arise from the same transaction or occurrence as Plaintiffs' claim for breach of the Non-Competition Agreement. Defendants admit that "Plaintiffs' claims all stem from an alleged breach of the [Non-Competition Agreement]." (Defs.' Br. at 4.) Yet, Defendants are attempting to make this lawsuit about more than what it should be limited to. Defendants' claim relates to a different subject matter – the confidentiality provisions of the settlement agreement, which is different from whether Defendants violated the Non-Competition Agreement. See Ins. Concepts, Inc. v. Western Life Ins. Co., 639 F.2d 1108, 1114 (5th Cir. 1981) (finding, on appeal from the N.D.Ga., that a party's counterclaim concerning another party's allegedly negligent or fraudulent delivery of a life insurance policy to a terminally ill policyholder was not relevant to a claim to enforce a settlement agreement and therefore was not a compulsory counterclaim).

The fact that the Non-Competition Agreement is an exhibit to a stock purchase agreement, which is an exhibit to the settlement agreement, does not change the fact that it is an independent agreement, executed as such, containing its own consideration, forum-selection clauses, and dispute resolution provisions, including a separate liquidated damages provision in the Non-Competition Agreement. Defendants agreed to those provisions, but now want this Court to ignore them. Defendants claim that the "*same transaction*" relevant to the compulsory counterclaim issue is the settlement of the previous lawsuit in Columbia County Superior Court. (Defs.' Br. at 4.) Plaintiffs' are not claiming a breach of the settlement agreement. Under Rule 13(a), just because two

agreements involve the same parties does not mean that if one of party sues the other for breach of one agreement, the other party must bring all claims it may have, including those for breach of another agreement.  See Shavers v. Massey-Ferguson, Inc., 834 F.2d. 970, 973-73 (11th Cir. 1987) (holding that claim for payment of debt owed on tractor accessories was not a compulsory counterclaim in suit for breach of warranty and fraud relating to the purchase of the tractor because the debt did not arise out of the same transaction or occurrence and it was merely coincidental that the note for the assessory equipment was involved in suit for breach of warranty and fraud); Plymouth Yongle Tape Co. v. Plymouth Rubber Co., 683 F. Supp. 2d. 102 (D. Mass. 2009) (holding that seller's counterclaims were not compulsory because they did not involve the same contracts or the same wrongful conduct alleged in manufacturer's claims);

Even where a counterclaim relates to the same contract as the initial claim, courts have found that the claims did not involve the same transaction or occurrence.  See Continental Federal Sav. & Loan Ass'n v. Delta Corp. of Am., 71 F.R.D. 697, 700-01 (W.D.Okla. 1976) (finding that even where counterclaim is based on the *same* contract it was merely permissive, and not compulsory, where alleged breaches involve different contract provisions and acts of the parties during different time frames, each alleged breach is unilateral by each party, entirely different evidence is required to prove each alleged breach and resulting damages, and the only common question was the existence of the contract at issue); Employers Ins. of Wausau v. U.S., 764 F.2d 1572, 1576-77 (Fed. Cir. 1985) (holding that although government's claim and government contractor's claim arose out of the *same* contract to cut and remove timber in a national forest, contractor's claim did not arise out of the same transaction or occurrence and was not a compulsory counterclaim).  Contrary to Defendants assertions, Plaintiffs' claim of improper actions by Defendants in violation of the Non-Competition Agreement does not arise from the same

4

transaction or occurrence as an alleged breach of the confidentiality provisions of a separate agreement.

II. <u>The settlement agreement is no longer confidential as a result of Defendants' actions; therefore, a claim for breach of the confidentiality provisions cannot be maintained.</u>

While Plaintiffs deny that they breached the confidentiality provisions of the settlement agreement, Defendants' counterclaim is either moot or barred by the doctrine of waiver and/or estoppel. "It is well-established that a party to a contract may waive a contractual provision for his or her benefit." <u>Forsyth Cnty. v. Waterscape Servs., LLC</u>, 303 Ga. App. 623, 630 (Ga. App. 2010) (citing <u>Euler-Siac v. Drama Marble Co.</u>, 274 Ga. App. 252, 254, (2005)).

> A waiver may be express, or may be inferred from actions, conduct, or a course of dealing. Waiver of a contract right may result from a party's conduct showing his election between two inconsistent rights . . . . However, all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist.

<u>Id.</u> (quoting <u>Greater Ga. Life Ins. Co. v. Eason</u>, 292 Ga. App. 682, 687 (2008)).

Defendants filed the confidential settlement agreement and most of the related exhibits with Defendants answer and counterclaims unsealed. In the Eleventh Circuit, such documents are judicial records that the public may inspect and copy. <u>Brown v. Advantage Eng'g, Inc.</u>, 960 F.2d 1013, 1014-16 (11th Cir. 1992). The settlement agreement and the corresponding exhibits that were filed are now public record and no longer confidential. A private settlement that is put on the record may become a public record in spite of a confidentiality term in the agreement itself. <u>See Copley Press, Inc. v. Peregrine Sys.</u>, 311 B.R. 679, 687-88 (D. Del. 2004) (holding that a document filed with the court is presumptively subject to the right of access unless properly sealed). By filing the settlement documents unsealed without seeking a protective order the Defendants made their claim moot at the outset. Furthermore, Defendants have waived and should be estopped from maintaining a claim for alleged damages caused by disclosure of confidential settlement terms when

Defendants disclosed all of the terms without regard to possible damages to Plaintiffs or further possible damage to themselves.

III. Defendants misapply the *forum non conveniens* doctrine.

Even though Defendants cite to the same relevant case law and *forum non conveniens* factors cited by Plaintiffs, Defendants misapply the law and the factors. Defendants focus primarily on the convenience of Plaintiffs to defend the counterclaim in this Court, which is not appropriate since it is not a specifically listed factor. Specifically listed as a factor is the convenience of Defendants in filing in an alternative forum, which supports dismissal here so Defendants can file in the court in which they filed the previous case.

Defendants argue that the private factors do not weigh in favor of dismissal and ignore the rule provided by case law that where the parties have agreed to a forum-selection clause, this Court must find that the private factors favor dismissal of a claim brought in a forum other than the selected one. "A binding forum-selection clause requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum." GDG Acquisitions, LLC v. Gov't of Belize, 749 F.3d 1024, 1029 (11th Cir. 2014). "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Atl. Marine Constr. Co. v. U.S. Dist. Court, 134 S.Ct. 568, 582 (U.S. 2013). "[T]he existence of a valid forum selection clause governing the claims at issue shifts the burden to the non-movant to establish that dismissal is improper." Blue Ocean Corals, LLC v. Phoenix Kiosk, Inc., No. 14-civ-61550, 2014 U.S. Dist. LEXIS 131714, at *8 (S.D. Fla. Sept. 19, 2014) (holding that a party bringing a claim for breach of a confidentiality provision failed to meet the "heavy burden of proof" that the forum-selection clause should be set aside).

Defendants repeatedly cite to Leon v. Millon Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001), for its discussion of the private factors. That case did not involve a forum-selection clause; therefore, the private interest analysis in Leon is inapposite.

Defendants unconvincingly argue that "when the [Non-Competition Agreement] was signed, none of the parties imagined that federal diversity jurisdiction would be created by Defendants moving hundreds of miles from Columbia County, Georgia . . . ." As Defendants' counsel is aware, federal diversity jurisdiction could have been created by Defendants moving less than twenty-five (25) miles away into South Carolina. If Defendants wanted to remain in the gymnastics business, they would have to do it outside the thirty (30)-mile radius from Plaintiffs' gym. Thus, federal diversity jurisdiction was specifically anticipated and agreed to by the parties in the forum-selection clause.

Leon involved a plane crash in Ecuador, where the public interest factors regarding litigating in a foreign court were of greater import than in this case. Nevertheless, the public factors also favor Columbia County as the forum to resolve the counterclaim for breach of the settlement agreement, where the prior case was pending and later settled.

IV. <u>Defendants' claims for indemnification and specific performance are not ripe because there has been no anticipatory repudiation.</u>

Defendants assert that they have a reasonable and good faith belief that Plaintiffs will not pay the promissory note payments as they become due. Defendants rely on "the mere filing of this lawsuit" as evidence of repudiation. (Defs.' Br. at 9.) The Georgia Court of Appeals has described anticipatory repudiation this way:

> As the name implies, the "anticipatory repudiation" of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract. While technically such a repudiation is not a breach of contract, the contractual time for performance not having arrived, the law recognizes that under certain circumstances the innocent

7

> party to the contract may treat such an anticipatory repudiation as a breach thereof. Thus when one party to a bilateral contract of mutual dependent promises *absolutely refuses* to perform and repudiates the contract prior to the time of his performance, the innocent party is at liberty to consider himself absolved from any future performance on his part and has an election of several possible remedies, including the right to rescind the contract altogether and recover the value of any performance he has already rendered.

CCE Fed. Credit Union v. Chesser, 150 Ga. App. 328, 330 (1979) (emphasis added) (citations omitted) (upholding the lower court's striking of an anticipatory breach defense because there was no repudiation of contract). The doctrine of anticipatory repudiation applies "only if there is an unqualified repudiation of the entire obligation prior to the time of performance." Powell v. Emory Univ., 268 Ga. 658, 660 (1997) (upholding grant of summary judgment because there was no repudiation). Here, as in Chesser, there has been no absolute refusal to make payments on the promissory note, and there has been no action by Plaintiffs that could be considered an unqualified repudiation.

During the Rule 26(f) telephone conference, Plaintiffs' counsel, on behalf of his clients, volunteered to deposit the promissory note payments into the registry of this Court as they become due until this litigation is resolved. Since Plaintiffs' counsel has not received Defendants' counsel's consent to file a consent motion with the Court, Plaintiffs file a Motion to Escrow Note Payments contemporaneously with this reply. This should remove any alleged doubt about whether the payments will be made as they become due.

Defendants cite to Dunkin' Donuts of America v. Minerva, 956 F.2d 1566 (11th Cir. 1992), as supporting their position. That case is readily distinguishable for several reasons, including, but not limited to: (1) the fact that the Eleventh Circuit was interpreting Massachusetts law as it applied to anticipatory repudiation, not Georgia law, which is applicable in this case; (2) that it was both the notices of termination sent by the franchisor *and* the filing of the lawsuit that amounted to

8

anticipatory repudiation; and (3) the Eleventh Circuit found that there was an actual breach of contract, not merely an anticipatory repudiation of one. Id. at 1582-84. Based on the foregoing, Defendants' claims for indemnification and specific performance should be dismissed.

V. Defendants' claim for fraud should be dismissed because Defendants fail to state with particularity the circumstances constituting fraud.

In their brief, Defendants improperly attempt to flesh out their fraud claim in more detail than provided in their counterclaim. Even with that, the fraud claim still lacks sufficient particularity. Defendants vaguely reference "allegations of 'prolonged multi-act schemes'" in their brief (Defs.' Br. at 10), even though no such allegations are in their counterclaim. Defendants fail to state how Daniel Hayden committed these schemes, what they were, when they occurred, or where they were committed. More fundamentally, Defendants fail to state in their counterclaim what misrepresentations made up the schemes referenced in their brief. Contrary to Defendants' assertion in their brief (Defs.' Br. at 11), their counterclaim fails to provide specific examples of Daniel Hayden's alleged fraudulent behavior.

Defendants suggest that their vague allegations of fraud should be presented to a jury. (Defs.' Br. at 11-12.) Rule 9(b) was intended to prevent injury to potential defendants from irresponsible allegations of fraud and to enable a defendant to understand and effectively prepare a proper response. Durham v. Business Management Associates, 847 F.2d 1505, 1511 (11th Cir. 1988). Enforcement of Rule 9(b) avoids wasting the jury's and this Court's time with non-specific and spurious allegations. Complying with Rule 9(b) is necessary for a fraud claim to get past the pleadings stage of a case, long before being presented to a jury. Because Defendants' fraud claim fails to satisfy Rule 9(b), it should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the counterclaims discussed above.

Respectfully submitted, this 15th day of April, 2015.

        s/ J. Brian King
        J. Brian King
        Georgia Bar No. 420948

        s/ John A. Donsbach
        John A. Donsbach
        Georgia Bar No. 225827

        Attorneys for Plaintiffs
        Donsbach & King, LLC
        P.O. Box 212139
        Martinez, Georgia 30917-2139
        Telephone: (706) 650-8750
        Facsimile: (706) 651-1399
        Email: bking@donsbachking.com
                jdonsbach@donsbachking.com

CERTIFICATE OF SERVICE

This is to certify that on this 15th day of April, 2015, the undersigned filed the foregoing REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS with the Clerk of Court using the CM/ECF system which will automatically send e-mail notifications of the filing to all counsel of record.

s/ J. Brian King<br>
J. Brian King